969 P.2d 824

Tetsuya NAKATO, Individually and as Administrator for the Estate of Haru-ko Nakato, Plaintiffs–Appellants,

v.

Carlyle MACHARG III, Kimiko Macharg, Carlyle Macharg III, as Trustee of Carlyle Macharg III Trust; Kimiko Macharg, as Trustee of Kimiko Macharg Trust, Defendants–Appellees,

and

Brian Thal, John Doe 1–10, Doe Corporation 1–10, Doe Partnership 1–10, Doe Entities 1–10, Defendants

No. 21144

Intermediate Court of Appeals of Hawai'i.

Dec. 8, 1998.

Ronald G.S. Au, on the briefs, for plaintiffs-appellants.

Gary G. Grimmer (Carlsmith, Ball, Wichman, Case & Ichiki, of counsel) on the brief, Honolulu, for defendants-appellees.

WATANABE, ACOBA and KIRIMITSU, JJ.

KIRIMITSU, J.

Plaintiffs–Appellants Tetsuya Nakato, individually and as administrator for the estate of his mother Haruko Nakato (Appellants), appeal from: (1) the First Circuit Court's October 24, 1997 judgment, entered pursuant to an order granting Defendant–Appellees' Carlyle MacHarg III, Kimiko MacHarg, Carlyle MacHarg III, as Trustee of Carlyle MacHarg III Trust, and Kimiko MacHarg, as Trustee of Kimiko MacHarg Trust (collectively, Appellees) motion to dismiss by summary judgment and expunge the Notice of Pending Action (NOPA); and (2) denial of Appellants' motion for reconsideration on January 14, 1998.

Appellants argue that the circuit court erred in (1) granting summary judgment, and (2) denying their motion for reconsideration. Because we conclude that the circuit court erred in granting summary judgment, we need not address Appellants' second argument.

## I. BACKGROUND

### A. Factual History

In May 1990, Appellants purchased a home at 3059 Kalākaua Avenue, Honolulu (the property) from Appellees for $4.4 million. On April 15, 1992, Appellants filed suit against Appellees, Appellants' realtor Ming Tsai and Haseko Realty (Haseko), and Appellees' realtor Chris Friese & Associates. Appellants claimed, among other things, that they had been induced to purchase the property through the alleged negligence and misrepresentation of Haseko and the alleged non-disclosure, fraud, and misrepresentation of Appellees.

In September 1994, Appellants listed the property for sale. Appellants subsequently learned through an independent land survey that the boundary stakes were in the wrong location and, consequently, that the property violated several zoning provisions, including the five-foot side yard boundary requirement. In light of these violations, Appellants took the house off the market.

Appellants also learned that, prior to the final building inspection in 1990, Appellees had their building contractor, Brian Thal (Thal) of Thal Construction, place the boundary stakes in the ground.

On December 30, 1994, Appellants filed a new complaint against Appellees, Thal, and Appellants' principal broker for not requiring the staking of the property prior to Appellants' purchase. Appellants maintained that the boundary stakes were incorrectly located by Appellees and Thal in order to comply with the City and County of Honolulu's (the City) setback requirements. Appellants also contended that the City issued its final approval of the construction based upon the improper staking.

Both cases were consolidated and set for trial on November 24, 1995. Prior to trial, the parties agreed to settle.

### B. Settlement Agreement

#### 1. On the Record

At the October 18, 1995 settlement conference, Appellants agreed to dismiss the consolidated lawsuits against Appellees and Thal in exchange for their promise to remedy the existing violations within one year. Appellants reserved the right to file a new complaint against Appellees and Thal if they failed to perform.

Appellees' attorney placed the settlement on the record on October 18, 1995 and stated, in relevant part:

[Appellees' Attorney]: Your Honor, the terms are as follows. All claims now pending between and among [Appellants], [Appellees] and Thal will be dismissed with prejudice, except ... for reserved claims,

which reserve claims are claims based on the allegations that; [sic] *(A), the foundation and walls of the house violate the side yard setback ...* which will be dismissed without prejudice, hereinafter referred to as reserved claims....

....

... [Appellees] will also *pay for, obtain approvals for variances for the reserved claims* to be defined above....

Next, in the event that [Appellees] are unsuccessful in *obtaining the side yard variance or the shoreline variance for recordation,* [Appellants] may immediately file a lawsuit in First Circuit Court for any causes of action arising from the purchase—well, let me—for the reserved claims. In other words, he may immediately file a lawsuit in First Circuit Court for the reserved claims.

....

... *It is understood that [Appellants' lawyer] has no [ ] responsibilities in obtaining any variance or setback requirement.*

....

Next point. *[Appellees] have 60 days within which to start the process of obtaining approvals, and one year to obtain the approvals of variances of house walls and shoreline setback—I should say house · walls and foundation and shoreline setback ....*

[Appellants] will have 90 days to file the suits described above after the time just described expires. So, in other words, [Appellants] will have 90 days after the approximately 16 months that we're allowing for *the government approvals and/or variances* in which to file the suits described in this settlement.

Next point. *[Appellants, Appellees, and Thal (collectively, all parties) ] will cooperate to obtain the approvals for variances,* and finally each party will bear their own attorney's fees and costs.

(Emphases added.) All parties accepted the proposed wording as given by Appellees' attorney who then took responsibility for drafting the final set of documentation.

2. *Written Agreement*

The parties subsequently .executed a written Settlement Agreement and Partial Release (the Agreement) which memorialized the settlement terms. The Agreement differs from the settlement on the record and provides, in relevant part:

*SETTLEMENT AGREEMENT*
*AND PARTIAL RELEASE*

This Settlement Agreement and Partial Release ... is made by [Appellants] and [Appellees and Thal]:

*RECITALS:*

....

B. [Appellants] filed suit as plaintiffs against [Appellees] on April 15, 1992.... On December 30, 1994, [Appellants] filed [another complaint] and both cases were consolidated.... The second case asserted claims that the improvements on the property violated the City and County Zoning and Building Codes and shoreline regulations;

C. The parties hereto have agreed to resolve the claims between them and this is a memorial of that agreement.

*WITNESSETH:*

Therefore, [all parties] agree as follows:

1. *Zoning, Building and Shoreline Approvals:*

a. All claims now pending between [all parties] will be dismissed **with** prejudice, except claims based on the allegations that (a) the foundation and walls of the house violate the side yard setback ... hereinafter referred to as "Reserved Claims"....

b. The claim that the steps in the Koko Head side yard violate the side yard setback because they are taller than 30 inches in height shall be resolved by [Appellees] taking responsibility for obtaining approval of or a variance for the steps, and if the approval or variance is not obtained, paying for the cost of remodeling that entry way to comply....

c. [Appellees] will also pay for obtaining [the City] and/or State [of Hawai'i (the

State)] *approvals* for the Reserved Claims....

....

e. [Appellants' attorney] will receive all correspondence and applications and will be kept apprised of the current progress of *obtaining governmental approvals* on a monthly basis. It is understood that [Appellants' attorney] has no responsibility in *obtaining any approval or variance or setback requirement.*

f. In the event that [Appellees] are unsuccessful in obtaining the side yard *approval or variance* or shoreline variance or recertification, [Appellants] may immediately file a lawsuit in the First Circuit Court for any causes of action arising from the purchase of [the property], except that the lawsuit shall be limited to the Reserved Claims.

....

j. [Appellees] have sixty days from within which to start the process of *obtaining the approvals and/or variances and one year from now to obtain the approvals or variances of the house walls and foundation and the shoreline setback* ....

....

l. [All parties] will cooperate to obtain *the approvals or variances.*

....

2. *Settlement Amount.* The consideration for this Settlement Agreement is (a) [Appellants'] dropping of certain claims and (b) [Appellees] agreeing to perform the acts stated above. [All parties] hereby acknowledge the sufficiency of this consideration.

(Emphases added.)

### C. *Post–Settlement Agreement*

During the one-year period following the Agreement, Appellees satisfactorily resolved two of the three identified problems. However, the parties disagreed whether Appellees had satisfied their obligation with respect to the side yard setback.

Appellants filed a complaint on March 27, 1997, followed by a first amended complaint on May 16, 1997, for deficiencies related to the side yard setback violations. In May 1997, Appellants agreed to convey the subject property to Sumitomo Bank of Japan (Sumitomo) as part of a foreclosure settlement.

### 1. *Motion for Summary Judgment*

On June 9, 1997, Appellees filed a Motion to Dismiss by Summary Judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 56, Expunge the NOPA and for Award of Fees and Costs. Appellees argued that Appellants' suit was "barred by the parties' previous written Settlement Agreement and Partial Release." According to Appellees, the Agreement provided that Appellants could file suit only if Appellees failed to obtain the City and/or State *approvals or variances* for the alleged violations. Appellees maintained, "it is ... undisputable" that they obtained approval of the side yard setback:

Here, [Appellees] were entitled to get approval or variance for the side yard setback. The language expressly provided for "approval" or "variance" because the contracting parties and their counsel did not know at that time whether [the City] would proceed by "approval" as compared to "variance." As can be seen by *Exhibits E, F, and G,* [the City] proceeded by "approval." Thus [Appellees] complied with [the Agreement] and the suit is barred.

### a. *"Exhibit F"*

In support of their assertion that they had received the required "approval," Appellees submitted an exhibit (which was neither sworn to, nor certified) which contained the following letter from Appellees' attorney:

April 1, 1997

Dear [Appellants' Attorney]:

This is further response to your letter of February 14, 1997. I gather from your letter that you have now agreed that approval was obtained for the side yard steps and is no longer an issue. However, you have raised the issue of whether reserved claim (a)—that the foundation and walls violate the side yard setback has been resolved. *Enclosed is the City's certificate of compliance and a cover letter from the*

*surveyor that assisted me on this matter.* Thus the alleged side yard setback violation raised by your surveyor has been resolved.

As you know, the building has never been cited for these issues and I am not sure where they arose in your surveyor's mind in the first event since we believe these are non-issues and should be able to be resolved by conversation with each other.

> Very Truly Yours,
>
> [/s/ Appellees' Attorney]

(Emphasis added.)

The enclosures referenced above, and included in Exhibit F, consist of (1) a March 27, 1997 letter to Appellees' attorney from James R. Thompson (Thompson), President of Walter P. Thompson, Inc. Surveying & Mapping, and (2) an apparent printout of a computer screen regarding approval of the property's building permit, and approval of the property as built.

Thompson's letter reads as follows:

Gentlemen:

Transmitted herewith is material received from the Building Department pertaining to the property on Kalakaua [Kalākaua] Avenue at Waikiki [Waikīkī], Honolulu, Oahu [O'ahu], Hawaii [Hawai'i].

I spoke to the senior inspector as to the lack of setback, 0.10 feet on either side of the lot. He said that depending on the individual situation, the inspectors have the authority to approve setbacks less than required by code.

The attached material is the Building Departments [sic] certification that as far as they are concerned all regulations have been met for this property.

I hope that this is satisfactory to your request.

> Very truly yours,
>
> WALTER P. THOMPSON, INC.
>
> [/s/] James R. Thompson
>
> President

The second enclosed document is entitled "Building Permit Application Display" and, as noted above, appears to be a computer printout. It contains the initial permit application information (initial permit issued on 12/19/88) and is stamped with the following:

## BUILDING DEPARTMENT

## CITY AND COUNTY OF HONOLULU

Work under the above mentioned building permit has been completed to the best of our knowledge, in conformance with the applicable building codes and regulations.

It is signed (indecipherable) and dated March 20, 1997. Attached to this document is the initial building permit application which appears to be dated December 19, 1988.

### b. *"Exhibit G"*

In further support of their motion, Appellees also attached the following letter dated April 8, 1997 from their attorney:

Dear [Appellants' Attorney]:

This responds to your letter dated April 3, 1997 concerning the side yard.

[Appellees] agreed to obtain approval of or a variance for the side yard steps. [Appellees] agreed to obtain approval, but not a variance, for the issue of whether the foundation and wall of the house violate the side yard setback. *In fact, the City does not handle minor discrepancies such as one tenth of a foot on the wall of the house in the side yard, by the variance procedure. It handles it by the approval procedure I have already sent to you.* The one tenth of a foot does not materially affect the value of the property. [Appellees] have obtained approval for both side yard steps and the foundation and wall of the house. They have complied completely with [the Agreement]. There is nothing in [the Agreement] that requires that [Appellees] assist [Appellants] in obtaining title insurance. [Appellants] have no further causes of action that [they] can pursue.

[Appellees] have performed completely under [the Agreement]. In any event, I am not sure your client is the real party in interest to assert claims concerning the residence since Sumitomo has a prejudgment attachment on it.

[/s/ Appellees' Attorney]

(Emphasis added.)

### 2. *Memorandum in Opposition*

On July 8, 1997, Appellants filed a Memorandum in Opposition to Appellees' Motion to Dismiss by Summary Judgment, Expunge the NOPA, and for Award of Fees and Costs (Memorandum in Opposition). Appellants argued that the Agreement specifically reserved their right to sue for claims based on the allegation that the foundation and walls of the house violated the side yard setback. According to Appellants, Appellees "have not made any good faith effort to correct the side yard setback."

In support of their opposition to the motion for summary judgment, Appellants attached the following October 31, 1994 deposition testimony from City Senior Building Inspector Wendell Ko (Ko), who had conducted the original survey of the property:

Q. [Appellants' Attorney:] If when you took your measurements instead of finding the 5 feet like you actually did and you found what this is, which is 4 feet 10–13/16 inches toward the ocean side. . . .

. . . .

A. [Ko:] I would have cited the owner or the contractor.

Q. You don't have any authority to even—

A. There's no tolerance.

Q. —ignore an inch or two?

A. No.

Additionally, Ko's deposition testimony revealed the following:

Q. [Appellants' Attorney:] Let me summarize in the interest of my client here. This is on the assumption that based on Nakagawa, who did the professional survey, was a registered surveyor with [the State], that is correct, okay. . . . Would it be your recommendation as a Senior Building Inspector that, number one, [Appellants] should apply for variance on both left and right as to the less–than–5–foot setback.

A. [Ko:] Yes.

Q. That would be with DLU [ (Department of Land Utilization) ]?

A. Yes.

Appellants also included a letter from their attorney dated April 3, 1997, stating:

Dear [Appellees' Attorney]:

This letter will acknowledge receipt of your letter of April 1, 1997. *A certification by the City Building Department that the work was performed in conformance with the building permit is not satisfactory. This information was provided prior to [Appellants] filing the previous suit against Brian Thal and your clients.* Our discovery in that case disclosed that the Building Department accepted the boundary lines that had been set, without actually measuring the setback from the boundary lines. The surveyor confirmed that the boundary lines had been moved and in fact, the sideyard set back was not legal under the zoning code therefore requiring a variance.

We have since determined that a title company cannot issue title insurance to any buyer unless a variance is obtained. The Building Department is aware of the discrepancy, and [Appellants], as a Seller, [are] required to disclose this discrepancy to any buyer on this property. Under these circumstances, because the buyer cannot obtain title insurance, the property is unmarketable, unless a buyer is willing to waive this requirement. Our client bought this property in good faith and he should not be required to have property that he cannot obtain property insurance for because it requires a variance.

The information that I am providing to you was available over one year ago and it was for this reason, that we agreed to allow your clients the opportunity to obtain a variance. It appears that they have done nothing in this regard. Under these circumstances, [Appellants] had no alternative but to exercise [their] legal rights which were provided if the sideyard setback was not corrected.

. . . .

[/s/ Appellants' Attorney]

(Emphasis added.)

### 3. *Reply Memorandum*

In their Reply Memorandum, filed July 11, 1997, Appellees argued that Appellants' Memorandum in Opposition was "irrelevant," and that "all the information contained therein was within [Appellants'] and [their] counsel's knowledge at the time [the Agreement] were made." Appellees reiterated their assertion that they had performed under the Agreement.

### 4. *Hearing on Motion for Summary Judgment*

On July 16, 1997, the court held a hearing on the motion for summary judgment. According to the record:

[Appellees' Attorney]: The issue for the Court is whether or not the variance or approval was obtained for the two reserve claims and the third quasi-reserve claim. And I point out to the Court that there are eight references in the settlement agreement to variance or approval—or approval.

At Exhibit F to our motion is the City and County's approval of the building as a whole as constructed, and it's very simple. We got the approval. We should be dismissed. It doesn't matter whether [Appellants' attorney] has an opinion or somebody else in the world, including at the building department, has an opinion that this could have gone through the variance procedure because our agreement was to get a variance or approval. And we got that approval.

. . . .

It's clear that we have approval; and in any event, [Appellants] no longer own[ ] the property. As you can see from our papers, [they] settled with Sumitomo Bank, gave them title to the property, gave them a stipulated judgment for a billion something yen, and [they're] not the real [parties] in interest.

So for all those reasons, this case should be dismissed. Thank you.

In response, Appellants restated the reasons behind the first two lawsuits that led to the Agreement. Appellants referred to Ko's deposition testimony, and continued:

[W]e gave them over a year, judge, to get a variance on the side line because it definitely violates the law. All they've come back with is telling me one year later that we were not required—[Appellees' attorney's] letter, Exhibit G—[Appellees] agree to obtain approval of or a variance for the side yard steps.

[Appellees] agree to obtain approval, but not a variance for the issue of whether the foundational walled [sic] house violates the side yard setback. The agreement says that in the event the [Appellees] are unsuccessful in obtaining the side yard approval or variance, the best he comes back with over one year later, judge, is to tell me that when the house was built, the Building Department certified as built properly, which is what we knew when we filed the suit, judge, until we found out all the other things, the very thing we filed suit for.

. . . .

I wrote finally, judge, and I told him before filing this lawsuit and its exhibit here, the title company will not certify and give marketable title. The exceptions are the side yard setback, the steps. You have to get a variance from the City. That's what Wendell Ko says in his depo here, judge. I deposed him. He's not made any effort, and the reason is obvious. It's Diamond Head.

I'll let the Court—what little experience the Court has had with zoning and perhaps the general neighborhood, Your Honor, as to what Diamond Head, the Neighborhood Board, would do having written umpteen letters with three councilmen as well, when they were building it, that it was overbuilt, and now you come in for a variance? And that's why he's never even tried to get it.

. . . .

I submit to you, Your Honor, this is not a basis for summary judgment which counsel has moved for. I might add he hasn't even answered the Complaint yet. Thank you, judge.

Appellees argued, in response:

Very briefly, Your Honor. That was a closing argument for the trial that we settled in 1995, and all of that background was known to them when they settled the case. They knew that they had taken the property off the market. All the depos he cites had already been taken. He knew all that. He knew he was subject to the Sumitomo claim for a judgment and for a foreclosure.

If a variance was so important to them, having all that knowledge and all that background, why didn't they settle on that basis? They didn't because it wasn't that important. They settle [sic] on the basis of a variance or approval.

We never promised them anything about helping them get title insurance. We never promised about doing anything that would assure they got title insurance. So that's all irrelevant, too. All we promised was the approval, and we got it. And we got it even after [Appellants' attorney] had taken depositions of city officials, had gotten the city records showing all these complaints during the construction time.

. . . .

Appellants countered:

Your Honor, there's nothing in this complete file where the City says we approve the side yard setback. All he provide [sic] was a building completion way back when we bought the house which was the basis for the suit to be filed and fraud to begin with for the reasons I gave you. *He's gotten nothing, judge, not even an approval. There's nothing here, judge.*

THE COURT: Not even an approval, [Appellants' Attorney]?

[Appellants' Attorney]: Not even an approval on the side yard setback. All he got was Walter Thompson, an engineer, or his architect to say that back when they built that, there was a building permit approval when you go out and look at the house. And I've gone into what Wendell Ko talked about. He's the guy who actually did the inspection. Not even that, judge. It's not in there.

On October 16, 1997, pursuant to a minute order, the court granted Appellees' motion for summary judgment, stating:

Viewing the evidence in the light most favorable to [Appellants], the court finds that there are no disputed issues of material fact and that [Appellees] are entitled to judgment as a matter of law based on the following. The court finds that [Appellants'] claims are barred by the terms of [the Agreement] executed by the parties in 12/95. The court further finds that [Appellees] have complied with the material terms of [the Agreement]. *See Sylvester v. Animal Emergency Clinic of Oahu,* 72 Haw. 560[, 825 P.2d 1053] (1992).

On October 16, 1997, in response to this minute order, Appellants filed a motion for reconsideration.

On October 21, 1997, the order granting Appellees' motion for summary judgment was entered. On October 24, 1997, judgment was entered.

On November 21, 1997, while the motion for reconsideration was pending, Appellants filed their first Notice of Appeal. On January 14, 1998, the court entered an order denying Appellants' motion for reconsideration. On January 28, 1998, Appellants filed an Amended Notice of Appeal, to include an appeal of the denial of their motion for reconsideration.

## II. DISCUSSION

### A. Jurisdiction

■ Before addressing the merits of this case, we *sua sponte* consider the question of jurisdiction. Because Appellants filed their first notice of appeal while a motion for reconsideration was pending, there is a question whether their appeal has been timely filed. According to Hawai'i Rules of Appellate Procedure Rule 4(a)(4) (1996), an appeal filed while a motion for reconsideration is pending "shall have no effect." However, Appellants filed an "amended notice of appeal" after the motion for reconsideration had been denied which served to reestablish their appeal during the proper time frame.

The Hawai'i Supreme Court has stated that "while such an untimely appeal is a nullity, the filing of an amended notice of

appeal within the proper time after entry of the appropriate written order or judgment appealed from makes the appeal effective." *Bank of Honolulu v. Davids,* 6 Haw.App. 25, 27, 709 P.2d 613, 616 (1985) (citing *Madden v. Madden,* 43 Haw. 148, 151 (1959)). Consequently, we conclude that we have jurisdiction to hear this appeal and address each argument included in Appellants' Amended Notice of Appeal.

## B. *Motion for Summary Judgment*

 The only question we address on appeal is whether there exists any genuine issue of material fact such that the circuit court improperly granted Appellees' motion for summary judgment. Appellants claim that genuine issues of material fact exist concerning the "approval" of the side yard setback under the Agreement. We agree. Although Appellants raise numerous arguments as to why questions of material fact exist, we find it necessary to address only their argument that Appellees' "evidence" in support of "approval" was inadmissible.

### 1.

We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. As we have often articulated, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Macabio v. TIG Ins. Co.,* 87 Hawai'i 307, 311–12, 955 P.2d 100, 104–05 (1998) (citations and internal quotation marks omitted); *see* HRCP Rule 56(c) (1993).

### 2.

 "The moving party in a summary judgment proceeding has the obligation to show through affidavit, deposition, or other evidentiary materials, that there is no genu-

ine issue of material fact." *Miller v. Manuel,* 9 Haw.App. 56, 65, 828 P.2d 286, 292, *cert. denied,* 72 Haw. 618, 841 P.2d 1075 (1992) (citing *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 772 P.2d 1187 (1989)). Further,

[c]ourts will treat the documents submitted in support of a motion for summary judgment differently from those in opposition. Although they carefully scrutinize the materials submitted by the moving party to ensure compliance with the requirements of Rule 56(e), HRCP (1990), the courts are more indulgent towards the materials submitted by the non-moving party.

*Manuel,* 9 Haw.App. at 66, 828 P.2d at 292 (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2738 (2d ed.1983)).

HRCP Rule 56 *requires* that the exhibits attached to a motion for summary judgment be supported by an appropriate affidavit or certification. See *Fuller v. Pacific Medical Collections, Inc.,* 78 Hawai'i 213, 224, 891 P.2d 300, 311 (App.1995). HRCP Rule 56(e) provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." HRCP Rule 56(e) (1997). The "papers" must be admissible in evidence. "The decisions are legion which hold that this elementary, but fundamental requirement must be satisfied before an appellate court will consider documents presented for summary judgment." *Fuller,* 78 Hawai'i at 224, 891 P.2d at 311.

According to the Hawai'i Supreme Court:

[Rule 56(e) ] requires that facts set forth in the affidavits be admissible in evidence. All papers referred to in the affidavits must also be attached and sworn to or certified. These requirements are mandatory. As we pointed out in *Cane City Builders v. City Bank,* 50 Haw. 472, 443 P.2d 145 (1968) mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified.

*Pacific Concrete Fed. Credit Union v. Kauanoe,* 62 Haw. 334, 336–37, 614 P.2d 936, 938 (1980); *see also Fuller,* 78 Hawai'i at 224, 891 P.2d at 311 (citing *Cane City,* 50 Haw. at 474,

443 P.2d at 147) ("documents referred to in a motion for summary judgment must be sworn [to] or certified and attached to the affidavit if they are to be considered by the court" and citing cases).

As the *Fuller* court explained:

Obviously, the burden of ensuring that matters presented in support of the motion are admissible initially lies with counsel seeking the order. Nevertheless, as a matter of good judicial administration, the circuit courts should ascertain whether a foundation has been established for the admissibility of evidence offered in support of the motion before an order granting summary judgment is filed. Plainly, in the absence of self-authentication, the mere fact that counsel received the documents from a non-party in response to a request does not establish the authenticity of the documents.

*Id.*

### 3.

■ Appellants argue that Appellees failed to perform under the Agreement by failing to correct the side yard setback violations. Appellants maintain that the only "evidence" proffered by Appellees in support of their motion for summary judgment was "inadmissible hearsay." Although Appellants refer only to the letter by Thompson found in Appellees' Exhibit F, we conclude, *sua sponte*, that *none* of the documents submitted by Appellees, particularly Exhibit F, meet the requirements of HRCP 56(e).

#### Authentication Requirement Not Met

In support of their motion for summary judgment, Appellees' attorney attached a signed declaration, dated June 9, 1997, in which he states:

1. I am [Appellees' attorney]. . . . I am competent to testify to the matters contained herein and make this declaration on my own personal knowledge.

2. The exhibits which are attached hereto and marked Exhibits A through I, respectively, are true and correct copies of what on their face they appear to be.

3. The factual statements in the foregoing memorandum are true and correct. This "declaration" was not sworn to nor certified, nor did Appellees' attorney specify what each exhibit purported to be.

HRCP Rule 56(e) provides, in pertinent part:

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . .

■ Appellees' attorney's declaration is insufficient under HRCP 56(e) to establish a foundation as to the admissibility of the attached exhibits. "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rules of Civil Procedure (FRCP)] Rule 56(e) [(same as HRCP 56(e))] and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2722 at 382–84 (footnotes omitted); *see also Fuller*, 78 Hawai'i at 224, 891 P.2d at 311 (mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified). Appellees did not meet these requirements.

Initially, we note that Appellees' attorney did not attach an affidavit to the motion for summary judgment. Further, Appellees' attorney is not in a position to swear to, or certify, the exhibits attached to this motion. For example, Exhibit F, which is central to this case, contains three documents: (1) a letter from Appellees' attorney; (2) the Thompson letter, which refers to a discussion with a "senior building inspector," and serves to identify document; and (3) the supposed "approval" from the City. Appellees' attorney has no personal knowledge of any discussion between Thompson and a "senior building inspector," nor is he competent to testify to the content of Thompson's letter. Fur-

ther, Appellees' attorney has no personal knowledge that the "approval" is indeed what he asserts it to be, as he received this document from a third party. *See Fuller,* 78 Hawai'i at 224, 891 P.2d at 311 ("in the absence of self-authentication, the mere fact that counsel received the documents from a non-party in response to a request does not establish the authenticity of the documents").

We reject Appellees' assertion that because Appellants did not challenge the authenticity of the document below that we cannot address it here. In fact, Appellants challenged the content of Appellees' Exhibit F at the hearing on the motion for summary judgment and argued that the "certification of compliance" found in Exhibit F was insufficient performance under the Agreement.

This is not a case where the parties were in apparent agreement over the contents of the documents offered. Consequently, we distinguish those cases where this court has reviewed improperly offered exhibits on this basis. *See, e.g., Tradewind Ins. Co. v. Stout,* 85 Hawai'i 177, 181, 938 P.2d 1196, 1200 (App. 1997) (considering facts that parties apparently agreed to as indicated in their memoranda and statements at the summary judgment hearing, stating "we may refer to certain material facts alleged in the complaint which were admitted in the Defendants' answers and are thus not in dispute"), *cert. denied,* 85 Hawai'i 81, 937 P.2d 922 (1997); *Kohala Agric. v. Deloitte & Touche,* 86 Hawai'i 301, 325, 949 P.2d 141, 165 (App. 1997) (considering several of the non-moving party's exhibits "because these exhibits have been specifically referred to by [the moving party] without any objection as to their content, which we take as an indication of [the moving party's] apparent agreement that [the exhibits] are indeed true and correct copies of [what they purport to be]" (footnote omitted)); 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil* § 2722 at 60 (2d ed.1983) (stating that uncertified or otherwise inadmissible documents may be considered if not challenged).

██ Moreover, the evidence contained in Exhibit F is inadmissible hearsay. An affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment. *See* HRCP 56(e); *Rodriguez v. Nishiki,* 65 Haw. 430, 434 n. 3, 653 P.2d 1145, 1148 n. 3 (1982); *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975) ("To the extent that the affidavits [do] not comply with [HRCP 56(e) ] they should be disregarded").

Appellees argue that Exhibit F "includes [the City] Building Department's approval of the completed work under the applicable building permit." Appellees argue that Hawai'i Rules of Evidence (HRE) Rules 901(a) and (b)(7) (1993) provide that a public document of an agency of the City is authentic. Further, they assert that "the approval by the building department dated March 20, 1997 referencing the Carl MacHarg building permit at [the property] with building contractor Thal Construction clearly satisfies the requirement that on its face that approval is what it is claimed to be."

HRE 901, however, does not appear to be applicable here. It provides:

**Rule 901 Requirement of authentication or identification.** (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility *is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.*

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . . .

(7) Public records or reports. *Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.*

HRE Rule 901(a), (b)(7) (1993) (emphases added).

Appellees did not provide additional evidence to satisfy the requirements of HRE 901(a) and (b)(7). Nor does the Building Department "approval" appear to be self-

authenticating under HRE Rule 902.[1] Indeed, it is difficult from our review of the record to discern exactly what this document is, and further, whether it was received from an agency authorized to approve *zoning* violations. Under the County Charter, the Director of Land Utilization is specifically charged with administering "the zoning and subdivision ordinances and rules and regulations adopted thereunder...." 1994 RCCCH § 6–903(d). On the other hand, the Building Superintendent, who heads the Building Department, is responsible for enforcing housing and building codes. 1994 RCCCH § 6–1403(b). Where "Land Use Ordinances regulates what is placed on property, ... the Building Code is concerned with whether structures are built properly." *Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of City & County of Honolulu,* 86 Hawai'i 343, 355, 949 P.2d 183, 195 (App.1997). We note, in contrast, the much different form of "approval" from the City used by Appellees to satisfy a separate claim under the Agreement[2] (attached as Exhibit C to Appellees' motion for summary judgment), i.e., a letter signed by the Director of Land Utilization specifically referring to this separate claim and stating that "a variance is not required."

The question of whether Appellees gained "approval" as required under the Agreement is "material" as contemplated in HRCP Rule 56. It is core to Appellants' argument, and formed the basis for granting summary judgment. Appellees' failure to have the documents in Exhibit F certified or sworn to renders them inadmissible for purposes of a motion for summary judgment. Without this exhibit, there remains a question of fact as to whether Appellees have satisfied the terms of the Agreement. Consequently, we conclude that the circuit court improperly granted summary judgment.

In light of vacating the summary judgment, we also remand the question of attorney's fees, argued by Appellees in their Answering Brief.

### III. CONCLUSION

We vacate the First Circuit Court's October 24, 1997 judgment, entered pursuant to its order granting Appellees' motion to dismiss by summary judgment and expunge the NOPA, and remand to the circuit court for proceedings consistent with this opinion.

---

1. Hawai'i Rules of Evidence (HRE) Rule 902 (1993) provides, in relevant part:

 **Rule 902 Self-authentication.** Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
 (2) Domestic public documents not under seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
 . . . .
 (4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) [ (relating to foreign public documents) ] of this rule or complying with any statute or rule prescribed by the supreme court.
 HRE Rule 902(1), (2), (4) (1993).

2. Under this separate claim, Appellees agreed to resolve, through approval or variance, the claim that "the steps in the Koko Head side yard violate the side yard setback because they are taller than 30 inches in height."