A05A0252. BROCKWAY et al. v. HARKLEROAD et al.
(615 SE2d 182)

ANDREWS, Presiding Judge.

At issue is whether over 90 percent of the lot owners in a subdivision restricted to residential development by a recorded declaration of covenants and restrictions properly used an amendment provision in the declaration to shorten the duration of the declaration and terminate the covenants and restrictions. In the first appearance of this case, we held in *Licker v. Harkleroad*, 252 Ga. App. 872 (558 SE2d 31) (2001) that an attempt by 90 percent of the lot owners to amend the declaration to exempt only their lots from the restriction against commercial development on all the lots was void because, even though the declaration provided that it could be amended by agreement of at least 90 percent of the lot owners, the attempted amendment did not apply uniformly to all the lots in the subdivision; the declaration did not specifically allow the nonuniform amendment; and the amendment did not have the consent of all the adversely affected lot owners. The present appeal is from the trial court's order granting summary judgment approving a subsequent amendment to the declaration by over 90 percent of the lot owners in the subdivision which amended the initial duration period for the declaration from 20 years to 15 years and terminated the declaration for all the lots at the end of the 15-year period. Because this amendment was accomplished in compliance with amendment provisions in the recorded declaration; was agreed to by a sufficient majority of the lot owners; and applies uniformly to all the lots in the subdivision, we affirm the order in favor of the amendment despite the lack of consent by all the lot owners.

The subdivision at issue was developed in 1987 as a 112-lot residential community, and the declaration of covenants and restrictions was recorded in 1988 and applied uniformly to every lot sold in the subdivision. As set forth in *Licker*, supra, the declaration stated covenants and restrictions establishing a uniform scheme for a community restricted to residential development and having certain common facilities. The declaration provided that the covenants and restrictions shall run with the land for an initial twenty-year period and thereafter shall be automatically extended for successive ten-year periods unless seventy-five percent of the lot owners terminate the duration of the covenants and restrictions prior to the commencement of any such ten-year period. The declaration further provided that:

These covenants and restrictions may be amended during the first twenty (20) years from the date of this Declaration, by an instrument signed by not less than ninety percent (90%) of the Lot Owners and thereafter by an instrument

signed by not less than seventy-five percent (75%) of the Lot Owners.

As we noted in *Licker*, 252 Ga. App. 872, the subdivision never fully developed as planned. By the year 2000, only 18 homes had been built on lots in the subdivision; the homeowners association established in the declaration to manage the subdivision was nonexistent; and the common facilities such as the pool and clubhouse had been closed. Id. By that time, the developer had abandoned the development, and the Harkleroads and others (the investors) had purchased the undeveloped lots. Id. The investors have now purchased all but three of the lots in the subdivision and comprise well over 90 percent of the lot owners.

Acting pursuant to the amendment provisions in the declaration, the investors recorded an instrument on May 16, 2003, agreed to by over 90 percent of the lot owners, which amended the duration provisions of the declaration to provide that, instead of running for a period of 20 years from 1988 to 2008, the covenants and restrictions ran for only 15 years through May 30, 2003, with no provision for automatic extensions. It is undisputed that the effect of the amendment was to establish an earlier termination date for the covenants and restrictions on all the lots, and thus remove the restriction against commercial development on all the lots as of the new termination date. Kenneth and Eunice Brockway, who own a home located on one lot in the subdivision, are the only lot owners or interested lenders still opposing the amendment. Only two other lots in the subdivision, both with homes located on them, are not owned by the investors, and the owners of those lots failed to respond in the present litigation and had default judgments entered against them.

On these facts, the investors moved for summary judgment on their declaratory judgment action seeking a ruling that the amendment effectively terminated the covenants and restrictions and removed the restriction against commercial development as of the new termination date. The trial court granted summary judgment to the investors and the Brockways brought this appeal claiming the trial court failed to uphold the covenants and restrictions. We find no error in the trial court's order granting the motion and ruling that the amendment signed by over 90 percent of the lot owners effectively terminated the declaration of covenants and restrictions as of the new termination date.

The declaration expressly provided that it could be amended during the initial 20-year period by the agreement of at least 90 percent of the lot owners. Since the declaration was recorded, all those buying lots in the subdivision were charged with notice of and

were bound by the amendment provision along with all other provisions in the declaration. *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996); *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 95 (553 SE2d 389) (2001). Accordingly, the investors, acting as more than 90 percent of the lot owners, were entitled to enforce the clear written provisions of the declaration binding all the lot owners, and to use the amendment provision in any manner not contrary to law or public policy. *Bowman*, supra at 94-95; *Turtle Cove Property Owners Assn. v. Jasper County*, 255 Ga. App. 560, 561 (566 SE2d 368) (2002). In addition to the right to amend the declaration, we recognized in *Licker*, supra, that those buying real property in a common-interest residential community, like the subdivision at issue, obtain a protected interest in the uniform scheme set forth in the recorded declaration for development of the community. Id. at 876. We also recognized that amending the declaration in a manner destructive of the uniform scheme, even if done in accordance with terms of the declaration, may impair the protected interests of lot owners who do not consent to the amendment. Id. at 875-878.

To balance these interests in *Licker*, supra, we applied sections of the Restatement (Third) of Property dealing with servitudes. Restatement (Third) of Property: Servitudes, Chapter 6, Introductory Note (2000); *Licker*, supra at 876. As set forth in the restatement, servitudes in the nature of the declaration of covenants and restrictions at issue are regularly used to establish uniform schemes of residential development in common-interest communities, and they commonly contain provisions for amendment or termination of the declaration without the consent of all the lot owners. Restatement (Third) of Property: Servitudes § 7.1 cmt. c. With respect to nonuniform amendments to the declaration and other amendments that violate the community's duties to its members under § 6.13 of the restatement,[1] the restatement provides that those amendments "are not effective without the approval of members whose interests would be adversely affected unless the declaration fairly apprises purchasers that such amendments may be made." Id. at § 6.10. We need not address the issue of nonuniform amendments or amendments that violate § 6.13 because we find that the amendment at issue uniformly

---

[1] In addition to duties imposed by statute and the governing documents, the association created to manage the property or affairs of a common-interest community must use ordinary care and prudence while engaged in its management duties; must treat members fairly; must act reasonably in the exercise of discretionary powers such as rulemaking, enforcement, and design-control powers; and must give members reasonable access to information about the common property and the association and its financial affairs. Restatement (Third) of Property: Servitudes § 6.13 (1).

altered the duration of the declaration for all the lots in the subdivision, and that the amendment did not raise issues under § 6.13. The restatement also provides that, "[e]xcept as expressly authorized by the declaration," unanimous approval is required for amendments prohibiting or materially restricting the use of, occupancy of, or behavior within, individually owned lots, or for amendments which "change the basis for allocating voting rights or assessments among community members." Id. at § 6.10 (3). Similarly, we find that none of these issues is raised under the present amendment.

The uniform amendment at issue, which shortened the duration of the declaration for all the lots, was accomplished pursuant to a general amendment provision in the declaration allowing 90 percent or more of the lot owners to amend the declaration during the period of its first 20 years. A major amendment of this nature providing for early termination of the declaration, which the declaration did not specifically give notice could be made, and which was not consented to by all adversely affected lot owners, is nevertheless considered effective under the restatement if it applies uniformly to all the lots and is agreed to by lot owners holding at least a two-thirds majority of the voting power in the common-interest community.[2] Restatement (Third) of Property: Servitudes at § 6.10 (1) (b) cmt. e.; § 7.1 cmt. c. Because the amendment satisfied these requirements and was accomplished in compliance with the terms of the recorded declaration, we find that it effectively terminated the declaration as of May 31, 2003, and the trial court correctly granted summary judgment in favor of the investors.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 20, 2005.

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider*, for appellants.

*Schreeder, Wheeler & Flint, David H. Flint, Lynn C. Stewart, Davidson & Tucker, Gerald Davidson, Jr.*, for appellees.

---

[2] Compare Restatement (Third) of Property: Servitudes § 6.10 (1) (a) (setting forth other types of amendments requiring only a simple majority vote); OCGA §§ 44-3-93 (a) (1) (amendment of condominium instruments by two-thirds majority vote); 44-3-98 (a) (termination of condominium by four-fifths majority vote).