128 P.3d 874

**Allan LEE, Barbara Lee, Shirley Wetzel and Scott Donovan, Plaintiffs/Counterclaim Defendants–Appellees**

**v.**

**PUAMANA COMMUNITY ASSOCIATION and Board of Directors of the Puamana Community Association, Defendants–Appellants**

**and**

**John Does 1–100, Jane Does 1–100 Doe Partnerships 1–100, Doe Corporations–100, Doe Members of the Board of Directors 1–100, and Doe Puamana Committee Members 1–100, Defendants.**

**No. 24265.**

Supreme Court of Hawai'i.

Feb. 23, 2006.

Lissa H. Andrews, Honolulu, and Eric T. Krening of Andrews & Yamamoto, on the briefs, for defendants-appellants Puamana Community Association and Board of Directors of the Puamana Community Association.

Myles T. Yamamoto and Terrance M. Revere, Honolulu, of Motooka Yamamoto & Revere, on the briefs, for plaintiffs, counterclaim defendants-appellees Allan Lee, Barbara Lee, Shirley Wetzel and Scott Donovan.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Defendant-appellants, Puamana Community Association and Board of Directors of the Puamana Community Association [hereinafter collectively referred to as "Appellants"], appeal from the second circuit court's April 19, 2001 judgment in favor of plaintiff-appellees, Allan Lee, Barbara Lee, Shirley Wetzel, and Scott Donovan [hereinafter collectively referred to as "Appellees"], filed pursuant to Hawai'i Rules of Civil Procedure [hereinafter "HRCP"] Rule 54(b) (2001).[1]

On appeal, Appellants contend that the circuit court erred by granting Allan and Barbara Lee's [hereinafter the "Lees"][2] April 7, 2000 "Motion for Partial Summary Judgment Regarding Transfer of Common Elements to Private Use," inasmuch as: (1) the circuit court improperly applied condominium law and concepts to Puamana, a planned community association governed by Hawai'i Revised Statutes [hereinafter "HRS"] chapter 421J; (2) planned community associations have the right to amend their documents; (3) there is no evidence that the

amendment to the governing documents would adversely affect individual unit owners; and (4) courts uphold amendments to governing documents, including amendments which affect the ownership rights of the individual unit owners. Appellants also assert that the circuit court erred by denying their motion for reconsideration. Finally, Appellants contend that if this court should determine that the circuit court did not err by granting Appellees' motion for partial summary judgment, the circuit court's July 5, 2000 order requires clarification inasmuch as (1) the order is unclear as to whether or not it grants injunctive relief, and (2) if the circuit court's order is construed as awarding injunctive relief, the order is procedurally defective insofar as it violates the requirements set forth in HRCP Rule 65 (2000).

Based on the following analysis, we vacate the circuit court's April 19, 2001 judgment, inasmuch as the Lees failed to demonstrate that there was no genuine issue of material fact for trial and that they were entitled to judgment as a matter of law.

## I. BACKGROUND

### A. Factual Background

Puamana was established in 1968 as a Hawai'i non-profit corporation governed by the April 29, 1968 "Declaration of Covenants, Conditions and Restrictions" [hereinafter "CC & Rs"], recorded in the Bureau of Conveyances of the State of Hawai'i [hereinafter "BOC"] on May 8, 1968. Puamana occupied approximately thirty acres of land and consisted of approximately two-hundred and thirty subdivided units, in addition to common areas owned by Puamana. Each indi-

---

1. HRCP Rule 54(b) provides:
 (b) *Judgment upon multiple claims or involving multiple parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated,

which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

2. Shirley Wetzel [hereinafter "Wetzel"] and Scott Donovan [hereinafter "Donovan"] did not become parties to the action until approximately January 16, 2001. *See infra,* at n. 7.

vidual unit owner was a member of Puamana, and each owner's interest was subject to the "easements, restrictions, covenants, conditions, charges and liens . . . set forth in [the] [CC & Rs]." (Ellipses added.) (Brackets added.)

Although the CC & Rs contemplated that owners shall construct their private residences within the boundaries of their respective units, several owners constructed "pop outs" that encroached onto the common areas owned by Puamana. The term "pop out" refers to an expansion of the dwelling by which the exterior walls are pushed out toward the area beneath the eaves of the building structure. The Board of Directors of Puamana [hereinafter "Board"] initially assumed that the "pop outs" remained within the boundaries of the respective units because they did not protrude beyond the drip lines of the eaves. However, the Board subsequently discovered that the unit boundaries coincided with the original position of the exterior walls of the dwellings and that the "pop outs" encroached onto the common areas even though they remained under the eaves.

Dale W. Hillman [hereinafter "Hillman"] was one of the unit owners desiring to construct a "pop out," and he proposed to extend nearly all of his sixty-six-foot exterior wall two and one-half feet outward towards the eaves, creating an additional one-hundred and sixty-five square-feet of floor space. The Board rejected Hillman's proposal unless and until the CC & Rs could be amended to expressly permit encroachments onto the common areas. Subsequently, Puamana Community Association [hereinafter "Association"] and Hillman agreed to jointly submit cross-motions to the circuit court for a declaratory ruling as to whether the Board had the authority, without amending the existing CC & Rs, to allow such encroachments. On October 6, 1999, the court filed an order granting the Association's motion for declaratory relief, ruling that the CC & Rs, as

written, did not authorize the Board to permit encroachments onto the common areas. As a result, on October 19, 1999, the Board recorded a document entitled "Amendment of Puamana Declaration, Covenants, Conditions and Restrictions" [hereinafter "amended CC & Rs"] in the BOC. The amended CC & Rs purported to authorize the Board to approve "minor encroachments" of up to two-hundred square-feet per unit. The record indicates that the amendment was validly executed pursuant to the amendment procedure set forth in the CC & Rs.

## B. Procedural Background

The present proceedings arise from an October 28, 1999 complaint, filed by the Lees in response to the amended CC & Rs. The Lees alleged, among other things, that Appellants "wrongfully and deliberately attempted to transfer and in fact have transferred portions of the common elements or interest of the Puamana to individual unit owners in violation of Hawai[']i law and the project documents[.]"[3] (Brackets added.) The Lees prayed for, *inter alia*, injunctive relief as well as general, special, and punitive damages. Appellants filed their answer to the Lees' complaint on December 27, 1999.

Subsequently, on April 7, 2000, the Lees filed a "Motion for Partial Summary Judgment Regarding Transfer of Common Elements to Private Use." The Lees specifically alleged that they were entitled to partial summary judgment insofar as: (1) the Board could not rely on the amended CC & Rs to transfer common elements to individual owners because such action violated county requirements; (2) the Board could not divest property rights in the common areas that were expressly conveyed by deed; (3) Appellants were judicially estopped from asserting that they were permitted to "give away" the Lees' property interests; (4) Appellants essentially conveyed portions of the common area to individual owners for private use and

---

3. The Lees also claimed that they enjoyed a scenic view of Kaho'olawe from their third-floor loft, which was blocked when their neighbor, Mark Ciaburri, impermissibly constructed his own third-floor loft. The Lees averred that Appellants wrongfully approved Ciaburri's con-struction of the loft. However, these claims are not relevant in the present appeal inasmuch as the April 19, 1999 judgment pertained only to the Lees' claim regarding encroachments onto the common areas.

thus violated the principles set forth in *Penney v. Ass'n of Apartment Owners of Kaanapali*, 70 Haw. 469, 776 P.2d 393 (1989); and (5) the effect of the amended CC & Rs was not "minor" because the amended CC & Rs authorized the Board to "convey" up to forty-six-thousand square feet (nearly one acre) of the common area.

In response, on May 11, 2000, Appellants filed a memorandum in opposition to the Lees' motion for partial summary judgment. Appellants contended that the Lees were not entitled to partial summary judgment insofar as: (1) the circuit court lacked jurisdiction because HRS § 421J–13(a) (Supp.1997)[4] required that the matter be first submitted to mediation; (2) in the prior proceeding between the Association and Hillman, the Honorable E. John McConnell ordered the Association to make a good faith effort to amend the CC & Rs so as to permit encroachments onto the common areas; (3) the Lees had no admissible evidence in support of their allegation that Appellants' actions violated county requirements; (4) the Lees misconstrued the Association's arguments in the prior proceeding between the Association and Hillman [hereinafter "the Hillman action"], and thus the Lees' invocation of the construct of judicial estoppel was without merit; and (5) the unit owners' interests in the common areas were clearly subject to the CC & Rs and the amended CC & Rs.[5]

On May 18, 2000, the circuit court held a hearing on the Lees' motion for partial summary judgment. Without specifying any particular basis for its decision, the circuit court orally granted the Lees' motion. On July 5, 2000, the circuit court filed an order granting the Lees' motion for partial summary judgment.

On July 18, 2000, Appellants filed a motion for reconsideration. Appellants argued that they were entitled to relief inasmuch as: (1) the order violated HRS § 421J–13; (2) the order directly contradicted Judge McConnell's order; (3) the Lees' warranty deed was subject to the CC & Rs and amended CC & Rs; (4) the Association properly amended the CC & Rs so as to permit minor encroachments onto the common areas; (5) courts have upheld amendments to governing documents, including amendments which affect ownership rights of the individual unit owners; (6) complete and correct copies of the declaration and amended declaration were not submitted with Appellants' memorandum in opposition;[6] (7) the Lees failed to provide any evidence that the encroachments violated the Maui County Code [hereinafter "MCC"]; (8) Puamana was not a condominium property regime and therefore *Penney* did not apply; and (9) the July 5, 2000 order was invalid insofar as (a) the order bound persons who were not parties to the action, (b) the order failed to set forth any basis for the decision, and (c) the order was not sufficiently detailed and failed to specify the acts sought to be restrained. The Lees filed a memorandum in opposition to Appellants' motion for reconsideration on August 7, 2000. Appellants thereafter filed a reply memorandum on August 11, 2000.

On December 4, 2000, the circuit court filed an order denying Appellants' motion for reconsideration. On February 15, 2001, Appellants filed a motion for certification of the order granting the Lees' motion for partial summary judgment, as well as the order denying Appellants' motion for reconsideration, pursuant to HRCP Rule 54(b). On April 19, 2001, the circuit court granted Appellants' motion for certification. The circuit court also filed a "Final Judgment in Favor of Plaintiffs Allan Lee, Barbara Lee, Shirley Wetzel and Scott Donovan and Against Defendants Puamana Community Association and the Board of Directors of the Puamana

---

4. HRS § 421J–13(a) provides that:
 **Mediation of disputes.** (a) At the request of any party, any dispute concerning or involving one or more members and an association, its board of directors, managing agent, manager, or one or more other members relating to the interpretation, application, or enforcement of this chapter or the association documents, shall first be submitted to mediation.

5. On May 15, 2000, the Lees filed a reply memorandum in response to Appellants' memorandum in opposition.

6. Appellants argued that they inadvertently attached faulty copies of the CC & Rs and amended CC & Rs, some pages of which were out of order or missing.

Community Association With Respect to Plaintiffs' Claim Regarding the Transfer of Common Elements to Private Use." [7] Appellants filed a timely notice of appeal on May 14, 2001.

## II. STANDARD OF REVIEW

 In *Kau v. City & County of Honolulu*, 104 Hawai'i 468, 92 P.3d 477 (2004), we explained that the following principles guide our review of a circuit court's grant of summary judgment:

We review the circuit court's grant or denial of summary judgment *de novo. Hawai[i] Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Id.* (citations and internal quotation marks omitted).

*Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Id.* at 473–474, 92 P.3d at 482–483 (some brackets added, some in original). Subsequently, in *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 99 P.3d 1046 (2004), we discussed the particular burdens of production and persuasion as follows:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, *the moving party has the burden of producing support for its claim that: (1) no genuine issue of material facts exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts*, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part [sic] is entitled to summary judgment as a matter of law.

*Id.* at 470, 99 P.3d at 1054 (citing *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995) (emphasis added) (citations omitted)).

## III. DISCUSSION

Initially, we note that the circuit court's failure to iterate a basis for its decision is problematic. However, following a careful review of the record, the arguments raised before the circuit court, and the arguments raised on appeal, it is clear that all of the Lees' arguments before the circuit court were without merit and that the circuit court therefore had no tenable position upon which to grant summary judgment.[8]

---

7. Wetzel and Donovan first appeared as parties in an amended complaint filed on January 16, 2001.

8. Appellees's answering brief reiterates all of the arguments that the Lees presented to the circuit court in support of their motion for partial summary judgment. Accordingly, a finding that Appellees' arguments have no merit has the concomitant effect of invalidating the arguments presented by the Lees in support of their motion

**A. The Lees failed to meet their burden of producing admissible evidence demonstrating that the amendment to the CC & Rs violated county requirements and was therefore invalid.**

■ The Lees obtained ownership of their unit, as well as an easement over and upon the common elements, via warranty deed. Of particular importance is the fact that the warranty deed expressly subjected any interest conveyed thereby to the terms of the CC & Rs, as follows:

SUBJECT, HOWEVER, to the following:

1. RESERVING unto the State of Hawaii all mineral and metallic mines of every description.

2. COVENANTS, CONDITIONS and RESTRICTIONS in DECLARATION,

DATED April 29, 1968

RECORDED: May 8, 1968

LIBER 6052, PAGE 293, as supplemented by instrument dated January 30, 1969 recorded February 5, 1969 in Liber 6399, Page 126, and further supplemented by instrument dated December 5, 1969, recorded December 30, 1969 in Liber 6826, Page 248.

■ Although our jurisprudence with respect to restrictive covenants is, as of yet, in a comparatively pubescent state of development, we have long held that where a deed makes a specific reference to a restrictive covenant, the grantee is on notice that his interest is subject to the terms of that restrictive covenant. *See Pelosi v. Wailea Ranch Estates*, 91 Hawai'i 478, 489, 985 P.2d 1045, 1056 (1999) ("The individual defendants in the present matter *had* constructive notice, by virtue of their deeds, of the [ ] covenants.") (emphasis in original); *Rawlins v. Izumo Taisha Kyo Mission of Hawaii*, 36 Haw. 721, 726 (1944) (referring to the concept that equity will enforce a contract "containing restrictive covenants which create equitable easements, such as restrictive covenants in a deed or lease limiting the use of the land in a particular manner or prescribing a particular use which creates equitable servitudes.").

The CC & Rs placed further restrictions upon the Lees' easement over and upon the common elements, as follows:

Section 3. *Extent of Members' Easements.* The rights and easements of enjoyment created hereby shall be subject to the following:

(a) the right of the Association to take such steps as are reasonably necessary to protect the above-described properties against foreclosure; and

(b) the right of the Association, as provided in its Articles and By-laws, to suspend the voting rights and the enjoyment rights of any Member for any period during which any assessment remains unpaid, and for any period not to exceed thirty (30) days for any infraction of its published rules and regulations; and

(c) the right of the Association, in accordance with its Articles and By-laws, to borrow money for the purpose of improving the Common Properties and facilities and in aid thereof to mortgage said property, and the rights of such mortgagee in said properties shall be subordinate to the rights of the Owners hereunder;

(d) the right of individual Members to the exclusive use of parking spaces as provided in Section 4 hereof; and

(e) the right of the Association to dedicate or transfer all or any part of the Common Properties to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the Members, provided that no such dedication or transfer, determination as to the purposes or as to the conditions thereof, shall be effective unless an instrument signed by Members entitled to cast two-thirds (2/3) of the votes of each class of membership has been recorded, agreeing to such dedication, transfer, purpose or condition, and unless written notice of the proposed agreement and action thereunder is sent to every Member at least ninety (90) days in advance of any action taken; provided further, that notwith-

for partial summary judgment before the circuit court.

standing any provision in this Declaration to the contrary, the Declarant and/or the Association reserves the right (1) to dedicate portions of the Common Properties in fee simple and/or to dedicate rights in the nature of easements to the government or utility company for electric transmission lines and poles and water, gas, sewer and drainage pipe lines and all related facilities and (2) to dedicate or grant rights in the nature of easements and access rights to any government entity or party over and across the Common Properties for the purpose of performing services which shall be deemed by Declarant or the Association to be necessary or advisable.

(f) the right of the Association to govern by rules and regulations, the use of the Common Properties by the Members so as to provide the enjoyment of the Common Properties by every Member in a manner consistent with the preservation of quiet enjoyment of the Lot and Living Unit by every Owner.

(g) the right of the Association to suspend the voting rights and right to use of the recreational facilities by a member for any period during which any assessment against his Lot remains unpaid; and for a period not to exceed thirty (30) days for any infraction of its published rules and regulations.

Although the foregoing passage did not contemplate encroachments onto the unit owners' easements over and upon the common elements, the CC & Rs contained a general amendment provision by which the Association amended section 3 of the CC & Rs to read as follows:

Section 3. *Extent of Owners' Easements.* The rights and easements of enjoyment created hereby shall be subject to the following:

(a) the right of the Association to take such steps as are reasonably necessary to protect the above-described properties against foreclosure; and

(b) the right of the Association, as provided in its Articles and By–Laws, to suspend the voting rights and the enjoyment rights of any Owner for any period during which any assessment remains unpaid, and for any period not to exceed thirty (30) days for any infraction of its published rules and regulations and/or provisions of this Declaration, the Articles or the By–Laws of the Association; and

(c) the right of the Association, in accordance with its Articles and By–Laws and upon the written consent of a majority of its Owners, to borrow money for the purpose of improving the Common Properties and facilities and in aid thereof to mortgage said property;

(d) the right of individual Owners to the exclusive use of parking spaces as provided in Section 4 hereof; and

(e) the right of the Association to dedicate or transfer all or any part of the Common Properties to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the Owners, provided that no such dedication or transfer, determination as to the purposes or as to the conditions thereof, shall be effective unless an instrument signed by Owners entitled to cast sixty-five percent (65%) of the votes has been recorded, agreeing to such dedication, transfer, purpose or condition, and unless written notice of the proposed agreement and action thereunder is sent to every Owner at least ninety (90) days in advance of any action taken; provided further, that notwithstanding any provision in this Declaration to the contrary, the Declarant and/or the Association reserves the right (1) to dedicate portions of the Common Properties in fee simple and/or to dedicate rights in the nature of easements to the government or utility company for electric transmission lines and poles and water, gas, sewer and drainage pipe lines and all related facilities and (2) to dedicate or grant rights in the nature of easements and access rights to any government entity or party over and across the Common Properties for the purpose of performing services which shall be deemed by Declarant or the Association to be necessary or advisable.

(f) the right of the Association to govern by rules and regulations, the use of the

Common Properties by the Owners so as to provide the enjoyment of the Common Properties by every Owner in a manner consistent with the preservation of the quiet enjoyment of the Lot and Living Unit by every Owner.

(g) *the right of the Association to permit Minor Encroachments of a Living Unit onto the Common Properties subject to payment of such compensation and to such other conditions as shall be determined by the Board of Directors to be reasonable. "Minor Encroachments" as used herein shall be defined to mean the encroachment of a Living Unit from an adjacent Lot into an area of the Common Properties (i) not used by Owners for an originally intended special purpose, and (ii) no more than 200 square feet in area. Such Minor Encroachments shall not create any right of adverse possession in the Owners of the Living Unit and shall be the sole responsibility of the Owners thereof who shall maintain said Minor Encroachments in good condition.*

(Emphasis added.)

Appellants thus argue that the amendment, permitting minor encroachments onto the common areas, was valid inasmuch as the CC & Rs stated, in relevant part, the following:

The covenants and restrictions of this Declaration may be amended during the first thirty (30) year period by an instrument signed by not less than ninety per cent (90%) of the Owners, and thereafter by an instrument signed by not less than seventy-five per cent (75%) of the Owners. Any amendments must be properly recorded.

As averred by Appellants, the incorporation of a general amendment provision within the CC & Rs is foundational to our analysis. Ordinarily, amendments made pursuant to a general amendment provision will be upheld. *See Brockway v. Harkleroad*, 273 Ga.App. 339, 615 S.E.2d 182, 184 (2005) ("Accordingly, the investors, acting as more than 90 percent of the lot owners, were entitled to enforce the clear written provisions of the declaration binding all the lot owners, and to use the amendment provision in any manner not contrary to law or public policy."); *Mey-*

*erland Cmty. Improvement Ass'n v. Temple*, 700 S.W.2d 263, 266 (Tex.App.1985) ("[A]ppellants acquired their title to the property in the subdivision subject to the provision that the general plan of a residential subdivision might be altered by amendment of the original restrictions which established such plan. They may not successfully complain of its alteration in the manner so provided.") (alteration in original) (citations omitted); *Ardmore Park Subdivision Ass'n, Inc. v. Simon*, 117 Mich.App. 57, 323 N.W.2d 591, 594 (Mich.Ct.App.1982) ("We hold that where a deed restriction properly allows a majority, or a greater percentage, of owners within a particular subdivision to change, modify or alter given restrictions, other owners are bound by properly passed and recorded changes in the same manner as those contained in any original grant and restriction."); *cf. Wise v. Harrington Grove Cmty. Ass'n, Inc.*, 357 N.C. 396, 584 S.E.2d 731, 736 (2003) ("Therefore, under the common law, developers and lot purchasers were free to create almost any permutation of homeowners association the parties desired.").

However, the mere fact that an amendment is made pursuant to a general amendment provision does not render it valid *per se*. Although the members of a common interest community have the right to amend the governing documents, we also recognize the following countervailing interests:

In addition to the right to amend the declaration, ... those buying real property in a common-interest residential community ... obtain a protected interest in the uniform scheme set forth in the recorded declaration for development of the community.... [A]mending the declaration in a manner destructive of the uniform scheme, even if done in accordance with terms of the declaration, may impair the protected interests of lot owners who do not consent to the amendment.

*Brockway*, 615 S.E.2d at 184 (ellipses added) (brackets added). Thus, it is not a foregone conclusion that an amendment must be upheld simply because it was made pursuant to a general amendment provision.

For example, an amendment is nevertheless invalid if it (1) impairs the enjoyment

of the estate, (2) violates the law, or (3) is otherwise subversive of the public interest. *See Brockway,* 615 S.E.2d at 184 (stating that "investors, acting as more than 90 percent of the lot owners, were entitled to enforce the clear written provisions of the declaration binding all the lot owners, and to use the amendment provision in any manner *not contrary to law or public policy.*") (emphasis added); *Wise,* 584 S.E.2d at 735 ("As a general rule, '[r]estrictive covenants are valid *so long as they do not impair the enjoyment of the estate and are not contrary to the public interest.'*") (citing *Karner v. Roy White Flowers, Inc.,* 351 N.C. 433, 527 S.E.2d 40, 42 (2000)) (alteration in original) (emphasis added); *Houston Petroleum Co. v. Automotive Products Credit Ass'n, Inc.,* 9 N.J. 122, 87 A.2d 319, 323 (1952) (" 'The attempt to contravene the policy of a public statute is illegal ....' ... We therefore conclude that the restrictive covenants in question, being violative of the public policy of this State implicit in our zoning laws, are illegal.") (citation omitted) (ellipses added).

Furthermore, other courts have stated that nonuniform amendments and amendments that breach any fiduciary duties owed by an association to its members are invalid unless approved by every member whose interest is adversely affected. *See Brockway,* 615 S.E.2d at 185 ("With respect to nonuniform amendments to the declaration and other amendments that violate the community's duties to its members under § 6.13 of the restatement, the restatement provides that those amendments 'are not effective without the approval of members whose interests would be adversely affected unless the declaration fairly apprises purchasers that such amendments may be made.' ") (citing Restatement (Third) of Property: Servitudes § 6.10); *Licker v. Harkleroad,* 252 Ga. App. 872, 558 S.E.2d 31, 34 (2001) (" 'Amendments that do not apply uniformly to similar lots or units ... are not effective *without the approval of members whose interests would be adversely affected unless the declaration fairly apprises purchasers that such amendments may be made.*") (citing Restatement

(Third) of Property: Servitudes § 6.10(2) (2000)) (ellipses in original) (emphasis in original); *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363, 365 (1970) ("The original restrictions were clearly imposed on all of the described property, and though the restrictions themselves may be changed in whole or in part, the change or changes which might be made must affect all of the described property.").

Before the circuit court, the Lees argued that the Association may not do by amendment that which is contrary to applicable county requirements. However, the Lees were thereafter required to produce admissible evidence of a county violation. *See French,* 105 Hawai'i at 470–471, 99 P.3d at 1054–1055 ("Thus, it was Pizza Hut's burden, as the moving party, to produce *admissible evidence* that the average person in the general population cannot lift more than twenty-five pounds. This it failed to do.") (emphasis added). A careful review of the record indicates that the Lees failed to meet their burden of production. In their motion for partial summary judgment, and again on appeal, the Lees alleged the following two potential county violations: (1) the encroachments would violate the open space requirements set forth in MCC § 19.32.030(B);[9] and (2) the encroachments would contradict language in a letter from the planning director to the Puamana property manager.

MCC § 19.32.030(B) states, in relevant part, the following:

B. Not less than twenty percent of the total area of the tract shall be common protected open space, integrated with the lot payout and street system in order to maximize its park-like effect. Common protected open space shall mean open space to be owned in common by the individual owners within the development and maintained in open space for their common use and enjoyment.

However, the Lees failed to provide any evidence demonstrating that the encroachments would reduce the total area of common pro-

---

**9.** MCC § 19.32.030(B) was previously codified as The Permanent Ordinances of the County of

Maui § 8–1.17(c)(2) (1971).

tected open space such that less than twenty percent of the planned community association would consist of common protected open space. Accordingly, there remained a genuine issue of material fact as to whether the amendment would have the effect of reducing the existing common protected open space below the requisite threshold.

The Lees also attached a letter from the Maui County planning director, addressed to Mr. Craig D. Edwards, the property manager for Puamana, which stated, in relevant part, as follows:

In addition, *units are not allowed to expand beyond each unit's designated footprint and into the common area.* For most units this is the edge of the roof eve [sic] and the original header beam on the patio side of each unit.

Should the Puamana Association wish construction improvements deemed inconsistent with the original plans, amendments to this plan could be requested from the Maui Planning Commission. The Department WILL NOT process individual amendments from individual owners. A comprehensive plan which conforms with Chapter 19.32 of the Maui County Code will be required.

(Emphasis added.) However, the foregoing letter cannot serve as the basis for the circuit court's grant of summary judgment inasmuch as the letter fails to meet the requirements set forth in HRCP Rule 56(e).

In *Nakato v. Macharg,* 89 Hawai'i 79, 969 P.2d 824 (App.1998), the Intermediate Court of Appeals [hereinafter "ICA"] stated the following:

HRCP Rule 56(e) provides, in pertinent part:

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith . . . .

Appellee's attorney's declaration is insufficient under HRCP 56(e) to establish a foundation as to the admissibility of the attached exhibits. "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rules of Civil Procedure (FRCP)] Rule 56(e) [(same as HRCP 56(e))] and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2722 at 382–84 (footnotes omitted); *see also Fuller,* 78 Hawai'i at 224, 891 P.2d at 311 (mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified).

*Id.,* 89 Hawai'i at 88, 969 P.2d at 834. The ICA further held that an attorney may not authenticate letters attached as exhibits by simply attaching a signed declaration that states as follows:

1. I am [Appellees' attorney]. . . . I am competent to testify to the matters contained herein and make this declaration on my own personal knowledge.

2. The exhibits which are attached hereto and marked Exhibits A through I, respectively, are true and correct copies of what on their face they appear to be.

3. The factual statements in the foregoing memorandum are true and correct.

*Id.*

In the present case, the Lees' attorney attached a similar declaration which stated as follows:

1. I am the attorney for the Plaintiffs herein and make this declaration on the basis of personnel [sic] knowledge and under penalty of perjury.

2. All exhibits attached hereto are true and correct copies of what they purport to be. Except for those authenticated by Mr. Lee, all others have been copied from the records deposition in this matter of the Puamana's managing agent and/or are public record.

3. We respectfully request that the Court take judicial notice of the pleadings

filed in *Puamana v. Hillman* case discussed in the memorandum in support of this motion.

I DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING IS TRUE AND CORRECT.

Accordingly, the letter was not properly authenticated and failed to meet the requirements set forth in HRCP Rule 56(e).

The Lees have thus failed to produce any admissible evidence to support their allegation that the amendment would violate county requirements.

### B. The amendment does not divest property rights conveyed by deed.

■ Appellees also argue that the Association essentially "gave away" their property in direct violation of their warranty deed. For support, Appellees quote the following passage from our prior decision in *Fong v. Hashimoto*, 92 Hawai'i 568, 576, 994 P.2d 500, 508 (2000):

> It would be absurd to allow a vendor to alter the nature of property rights, where property has been sold via an [agreement of sale], to the detriment of the vendee during the executory period. Likewise, we cannot allow a vendor to alter the nature of property rights sold pursuant to an [agreement of sale], for the benefit of the vendee, during the executory period. Either result would be unjust.

However, the foregoing language was meant to prohibit a vendor from creating a restrictive covenant that either conveyed a benefit or imposed a burden on property to which the vendor retained "bare legal title." [10] *Id.* To put it mildly, that rule has no bearing on the present matter.

Furthermore, the Lees' warranty deed did not convey absolute title. The plain language of the deed subjected any interest conveyed thereby to the terms of the CC & Rs. The CC & Rs contained a general amendment provision by which its terms could be amended, provided that the requisite number of votes were obtained. Accordingly, any interest conveyed by the Lees'

warranty deed was subject to the amendment process set forth in the CC & Rs. Appellees cannot now claim that the valid exercise of such an amendment procedure divested property interests, inasmuch as their deed expressly subjected those property interests to the amendment procedures. *See* discussion *supra.*

### C. Appellants' arguments are not precluded by their prior judicial admissions.

■ Appellees also attempt to foreclose Appellants' argument—that they may authorize minor encroachments onto the common areas—by asserting that Appellants are bound by their prior judicial admissions. We disagree.

■ A judicial admission is "a formal statement, either by [a] party or his or her attorney, in [the] course of [a] judicial proceeding [that] removes an admitted fact from [the] field of controversy. It is a voluntary concession of fact by a party or a party's attorney during judicial proceedings." *Han v. Yang*, 84 Hawai'i 162, 174 n. 18, 931 P.2d 604, 616 n. 18 (App.1997) (citing Am.Jur.2d *Evidence* § 770, at 137 (1994) (footnotes omitted)). More specifically, we have previously stated that "[i]t is well established that a party's factual allegation in a complaint or other pleading is a judicial admission which binds the party." *Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 320 n. 2, 713 P.2d 943, 949 n. 2 (1986).

Appellees specifically argue that Appellants are bound by the following statements set forth in the Association's motion for declaratory relief in the Hillman action: (1) "[t]he Governing Documents, of course, contemplate that owners shall construct their private residences within the boundaries of their respective lots and not on the common properties or on other owners' lots"; (2) "[t]he Association owns the Common Properties as separate parcels but *every* member has a 'right and easement of enjoyment in and to the Common Properties'"; (3) "[i]n

---

**10.** The phrase "bare legal title" referred to a vendor who, having executed an agreement of sale, held the property solely as security for payment. *Fong*, 92 Hawai'i at 576, 994 P.2d at 508.

the present case, all of the Members are, in essence, tenants in common as to the easements in the Common Properties, even though title is held in the name of the Association for purposes of convenience"; and (4) "[i]n fact, certain courts have concluded that even though a homeowners association may hold title to common areas, if members have nonexclusive easements to use those areas, the association's ownership rights are very limited." (Brackets added.) (Emphasis in original.)

The only two facts that the foregoing statements remove from controversy are that at the time the motion for declaratory relief was filed (1) the governing documents contemplated that the owners were not permitted to construct improvements on the common elements, and (2) each individual unit owner had an easement over and upon the common elements. Appellants' present position is not inconsistent with respect to the first statement inasmuch as Appellants do not contend that they were authorized to permit encroachments onto the common elements *at the time the motion for declaratory relief was filed.* Rather, Appellants assert that the CC & Rs were amended and that therefore they are *currently* authorized to permit encroachments onto the common elements. With respect to the second statement, Appellants continue to openly admit that each individual unit owner holds an easement over and upon the common elements.[11] Appellants' argument is that they may now, pursuant to the amended CC & Rs, permit minor encroachments onto the common elements.

The third statement is not binding as a judicial admission inasmuch as it is not a statement of fact. Rather it is more accurately described as a legal position, insofar as

it analogizes the interests owned by the individual unit owners to the property interests held by tenants in common. Accordingly, if Appellees desired to preclude Appellants from asserting inconsistent positions, the appropriate method would have been to invoke the construct of judicial estoppel. Appellees' failure to do so waives the argument on appeal.[12] *See* Hawai'i Rules of Appellate Procedure [hereinafter "HRAP"] Rule 28(b)(7) (2001) ("Points not argued may be deemed waived.").

A similar line of reasoning applies to the fourth statement—that "certain courts have concluded that even though a homeowners association may hold title to common areas, if members have nonexclusive easements to use those areas, the association's ownership rights are very limited." It is inapposite to contend that the foregoing statement is binding on Appellants as a judicial admission. Rather, as with the previous statement, the appropriate argument would have been to contend that Appellants are judicially estopped from taking a contrary position. Thus, inasmuch as Appellees failed to raise the argument on appeal, it has been waived. *See* HRAP Rule 28(b)(7).

Accordingly, we conclude that the content of Appellants' motion for declaratory relief filed in the Hillman action does not preclude Appellants from asserting that they may permit minor encroachments onto the common areas, pursuant to the amended CC & Rs.

**D. The principles set forth in *Penney* do not govern the present matter.**

*1. Penney is inapposite.*

Appellees also argue on appeal that our decision in *Penney* governs the present

---

11. In their opening brief, Appellants state that "[t]he Common Properties in Puamana are owned by the Association *subject to members' easements of enjoyment.*" (Emphasis added.)

12. Of course, this court is vested with the discretion to, *sua sponte,* invoke the construct of judicial estoppel. *See, e.g., West Virginia Dept. of Transp., Div. of Highways v. Robertson,* 217 W.Va. 497, 618 S.E.2d 506, 512–513 (2005) ("First, it is generally recognized that 'a court, even an appellate court, may raise [judicial] estoppel on its own motion in an appropriate

case.' ") (citations omitted) (alteration in original). However, we decline to do so based upon the record provided. *See New Hampshire v. Maine,* 532 U.S. 742, 750–751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ("First, a party's later position must be 'clearly inconsistent' with its earlier position.") (citations omitted) (quotation marks omitted); *Kolodge v. Boyd,* 88 Cal.App.4th 349, 105 Cal.Rptr.2d 749, 770 (2001) ("We are unwilling to invoke the doctrine [*sua sponte*] on this record.") (brackets added).

matter, and therefore Appellants were required to obtain the approval of all of the individual unit owners prior to permitting the conversion of the common elements to the private, exclusive use of individual owners. Appellees' argument, however, ignores a fundamental distinction between condominium property regimes and planned community associations—that condominium property regimes are creatures of statute, whereas planned community associations are primarily creatures of common law.[13] *See Coon v. City & County of Honolulu,* 98 Hawai'i 233, 252 n. 30, 47 P.3d 348, 367 n. 30 (2002) (" 'The condominium, or horizontal property regime, [was] a . . . creature of statute' that was given its initial formal recognition in Hawai'i in 1961.") (citing *State Sav. & Loan Ass'n v. Kauaian Dev. Co., Inc.,* 50 Haw. 540, 541, 546, 445 P.2d 109, 112, 115 (1968)) (alteration in original) (ellipses in original). This distinction renders *Penney* inapposite.

In *Penney* we held that "converting a common element to a limited common element diminishes the common interest appurtenant to each apartment[,]" and that "such conversion requires the consent of all the apartment owners." *Penney,* 70 Haw. at 471, 776 P.2d at 395. However, our holding was inextricably based upon HRS § 514A–13(b) (1985), which stated that "[t]he common interest appurtenant to each apartment as expressed in the declaration shall have a permanent character and *shall not be altered without the consent of all the apartment owners affected* [.]" *Penney,* 70 Haw. at 470, 776 P.2d at 395 (citing HRS § 514A–13(b)) (emphasis added) (alteration in original). We reasoned that converting a common element to a limited common element altered the permanent

character of the common interest appurtenant to each apartment and thus fell within the purview of HRS § 514A–13(b). *Id.* at 470–471, 776 P.2d at 395.

With respect to planned community associations, the legislature has not enacted an equivalent provision requiring unanimous approval prior to the alteration of the unit owners' interests in the common areas. In light of the legislature's intent to merely create a "basic framework," we have no doubt that the legislative omission was purposeful. Accordingly, we may not, by judicial fiat, apply a unanimous approval requirement that is derived from a statutory provision governing condominium property regimes in order to fill a purposeful omission in the statutory framework governing planned community associations. Thus, Appellees' invocation of *Penney* is misplaced.

### 2. *Judicial estoppel*

■ Appellees also argue that Appellants are judicially estopped from arguing that *Penney* does not apply. In the Hillman action, the Association argued that although *Penney* involved a condominium property regime, its principles applied with equal force to planned community associations. In the present case, Appellants now argue that "*Penney* . . . dealt with the express provisions of the condominium statute and the concept of ownership in a condominium, neither of which have any application here." Accordingly, Appellants have clearly taken an inconsistent position in the case at bar.

■ Pursuant to the doctrine of judicial estoppel,

---

**13.** As compared to the comprehensive statutory provisions set forth in HRS chapter 514A, governing condominium property regimes, the legislature has enacted only a basic framework with respect to planned community associations. *See* HRS §§ 421J–1 to –14 (Supp.1997); House Stand. Comm. Rep. No. 1188, in 1997 House Journal, at 1345 ("This bill provides for the *basic framework* and owner rights of self-governance.") (emphasis added). It is well settled that, in the absence of legislative intent to supersede the common law, such common law principles apply. *See Casumpang v. ILWU Local 142,* 108 Hawai'i 411, 421, 121 P.3d 391, 401 (2005) (reading HRS § 388–3 in the context of the en-

tire statute *and in light of the common law*); *Burns Int'l Sec. Serv., Inc. v. Dep't of Transp.,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983) ("Where it does not appear there was legislative purpose in superseding the common law, the common law will be followed."); *State v. Taylor,* 49 Haw. 624, 628–629, 425 P.2d 1014, 1018 (1967) (stating that "a court should not, merely by application of the maxim *expressio unius exclusio alterius,* find that the common law has been superseded in the area not mentioned by statute, where it does not appear that it was the legislative purpose to supersede the common law.").

[a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

[*Rosa v. CWJ Contractors, Ltd.*, 4 Haw. App. 210, 218, 664 P.2d 745, 751 (1983)] (quoting 28 Am.Jur.2d *Estoppel and Waiver* § 68, at 694–95 (1966) (indentation omitted)). Judicial estoppel " 'partakes ... of positive rules of procedure based on manifest justice and, to a greater or less[er] degree, on considerations of the orderliness, regularity, and expedition of litigation.' " *Id.* at 219, 664 P.2d at 751 (quoting *Trask v. Tam See*, 42 Haw. 324, 333 (1958)). This doctrine prevents parties from "playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation." *Id.* (citing *Godoy v. Hawaii County*, 44 Haw. 312, 354 P.2d 78 (1960); *see also Yuen Shee v. London Guar. & Accident Co., Ltd.*, 40 Haw. 213 (1953); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir.1982); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir.1982)). *Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (some brackets and ellipses in original).

■ While we have not distilled the doctrine beyond these general rules, the United States Supreme Court has more recently stated:

[S]everal factors typically inform the decision whether to apply [judicial estoppel] in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.] Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.* A

third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750–751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations and quotation marks omitted) (emphasis added) (brackets added). Because *New Hampshire* brings structure and clarity to the basic principles enunciated in *Roxas*, we employ the analysis here.

In light of the foregoing construct, we decline to apply the preclusive effects of judicial estoppel inasmuch as the Association clearly did not succeed in persuading the Hillman court to accept its earlier position. In an October 6, 1997 "Order (1) Granting Plaintiff Puamana Community Association's Motion for Declaratory Relief; and (2) Denying Defendants Dale W. Hillman and Patricia A. Hillman's Motion for Declaratory Relief," the circuit court ruled that the CC & Rs, as written, could not be "construed to grant to the Board of Directors of the Puamana Community Association or an architectural committee comprised of members thereof ... the power to grant encroachments onto the Common Properties ... for the benefit of a single homeowner." Accordingly, the circuit court neither accepted nor rejected the Association's position that the principles set forth in *Penney* applied to planned community associations. Neither was *Penney* foundational to Appellants' position in the Hillman action. Accordingly, Appellants' present position, though inconsistent, does not create the risk of inconsistent court determinations and poses little threat to judicial integrity.

**E. Whether or not the encroachments are classified as "minor" is inapposite.**

Finally, Appellees assert that the encroachments onto the common elements are not "minor." According to Appellees' calculations, the amendment authorizes the potential conversion of forty-six thousand square-feet of the common elements to private

use.[14] However, whether or not the encroachments are deemed "minor" is a question of semantics and not dispositive. The relevant inquiry is whether the amendment permits encroachments of such a magnitude as to render it invalid for the reasons discussed *supra* at Part III. A. The record is devoid of any admissible evidence that would support an affirmative response to the foregoing inquiry. Accordingly, the circuit court should not have awarded summary judgment based upon this contention.

## IV. CONCLUSION

Having carefully reviewed the record, as well as the arguments presented to the circuit court, we conclude that the circuit court had no sustainable ground upon which to grant the Lees' motion for partial summary judgment inasmuch as it had no viable arguments before it on the motion for summary judgment. Furthermore, Appellees have failed to raise, nor can we find, any independent ground upon which to sustain the circuit court's grant of summary judgment. *See Waianae Model Neighborhood Area Ass'n, Inc. v. City & County of Honolulu*, 55 Haw.

40, 43, 514 P.2d 861, 864 (1973) ("An appellate court may affirm summary judgment on any ground which appears in the record, regardless of whether the circuit court relied on it."); *Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1023 (9th Cir.1970) ("First it is proper for this court to affirm a summary judgment on any ground that appears from the record, whether or not the trial court relied on it.").

Accordingly we vacate the circuit court's April 19, 2001 judgment granting the Lees' motion for partial summary judgment and remand for further proceedings consistent with this opinion. It is therefore unnecessary to address the circuit court's denial of Appellants' motion for reconsideration and the circuit court's compliance with HRCP Rule 65.

14. The amendment permits the Board to authorize an encroachment onto the common elements of up to two-hundred square-feet per unit. Puamana consists of two-hundred and thirty individual units, and therefore Appellees conclude that the Board is authorized to permit encroachments totaling forty-six thousand square-feet.